SUSIE EVANS AND GEORGE H. EVANS v. MATTIE B. KAHR, MAMIE B. KAHR, AND LIZZIE CAMMACK.

#### No. 11277.

1. FORECLOSURE—*Amount Necessary to Redeem.* A mortgagor who seeks to redeem must pay the entire amount of the mortgage debt. The tender of an amount for which the property was sold under a decree of foreclosure, less than the sum of the mortgage debt and interest, is insufficient.

2. ———— *Purchaser not a Party — Effect of no Supersedeas Bond.* A sale of real estate was had under a decree foreclosing a mortgage. The sale was confirmed and a deed ordered to be delivered to the purchaser, who was not a party to the suit. The defendants in the judgment then prosecuted proceedings in error to this court, but gave no supersedeas bond. The purchaser sold the property to K. and C. Afterward the order confirming the sale was reversed by this court. *Held,* that an action thereafter brought by the mortgagors to redeem could not be maintained against the last-named purchasers.

Error from Shawnee district court; Z. T. Hazen, judge. Opinion filed July 8, 1899. Affirmed.

*H. C. Heald,* for plaintiffs in error.

*H. G. Larimer, Howel Jones, J. G. Slonecker,* and *George H. Whitcomb,* for defendants in error.

The opinion of the court was delivered by

Smith, J. : A judgment was rendered in the court below against plaintiffs in error for $6977, interest, and costs. At the same time a decree was entered foreclosing a mortgage given by them to secure said debt, and adjudging the amount to be a first lien on three lots in the city of Topeka. The property was sold October 21, 1895, under an order of sale, to John Bushnell for $6000, and the sale confirmed on November 25. Proceedings in error were commenced to review the order confirming the sale, and John Bushnell, the purchaser, was made a party thereto. On January 11, 1897, while the proceedings in error were pending in this court, John Bushnell, having dispossessed the plaintiffs in error of the premises, sold and conveyed the same to defendants in error for a consideration of $6000. On March 5, 1898, the order of the district court confirming the sale was reversed and set aside by this court. (*Evans v. Bushnell,* 59 Kan. 160, 52 Pac. 419.)

Thereupon the plaintiffs in error filed a petition in the district court asking that an accounting be had between themselves and defendants in error of the said premises and the amount due and owing by them to said defendants, and that plaintiffs in error be decreed the right to redeem the premises from the mortgage lien by the payment of such sum of money as

said accounting would find lawfully due the defendants, who were grantees from the purchaser at the sheriff's sale. The mortgage was originally held by the Lombard Investment Company, which assigned the same and the note secured by it to Daniel Bushnell, whose legal representatives, after his death, brought the action to foreclose. The amended petition in the case at bar contains, among others, the following allegations :

"That on October 21, 1895, the said premises were sold by the sheriff, as aforesaid, to John Bushnell, for the sum of $6000 ; that there was due, at the time of said sale, under said judgment of foreclosure, to the plaintiffs in said action to foreclose, a balance of $1697.96 ; that said balance was not assigned to John Bushnell, the purchaser, but has been and is now held by the original plaintiffs against the original defendants ; that said balance due on the judgment in force of about $1697.96 has not been assigned to these defendants ; that the judgment creditors offered to assign the said judgment to these defendants, but these defendants refused to accept the same."

A general demurrer was sustained to the petition, and plaintiffs below have brought such action of the trial court here for review. We will consider first the rights of the plaintiffs below to redeem from the grantees of the purchaser at the sheriff's sale, who are defendants in error here. This suit to redeem is confined to an offer to pay defendants in error the amount they paid John Bushnell for the property less the rents and profits. It is an old rule of equity jurisprudence, so venerable that it would be irreverent to question it, that a mortgagor who seeks to redeem acquires his standing in court by virtue of the mortgage, and must tender the amount thereof. Redemption is regarded as a "buying back" by the mortgagor of the legal es-

46—60 KAN.

tate after it has passed to the mortgagee.   In Pome-
roy's Equity Jurisprudence, section 1220, it is said :
" No such redemption, however, is possible unless the
mortgage debt is due and payable, nor unless the
mortgage is wholly redeemed by payment of the en-
tire amount of the mortgage debt." In *Collins v. Riggs*,
14 Wall. 491, Mr. Justice Bradley, speaking for the
court, said :

"To redeem property which has been sold under a
mortgage for less than the mortgage debt, it is not
sufficient to tender the amount of the sale.   The
whole mortgage debt must be tendered or paid into
court.   The party offering to redeem proceeds upon
the hypothesis that, as to him, the mortgage has
never been foreclosed and is still in existence.   There-
fore he can only lift it by paying it.   The money will
be subject to distribution between the mortgagee and
the purchaser, in equitable proportions, so as to reim-
burse the latter his purchase money and pay the
former the balance of his debt." ( Pingree, Mortg.,
§ 2184 ; Jones, Mortg., §§ 1072–1075 ; *Hasford v. John-
son et al.*, 74 Ind. 479 ; *Martin v. Fridley*, 23 Minn. 13 ;
*Bradley v. Snyder et al.*, 14 Ill. 263–266 ; *Vroom v. Dit-
mas et al.*, 4 Paige, 526 ; *Johnson v. Harmon*, 19 Iowa,
56.)

That the amount the plaintiffs in error must pay to
redeem is measured by the amount of the mortgage
and interest, is the settled rule.   If the amount of the
purchase-money paid at the sheriff's sale was to de-
termine the amount required to redeem, then in case
the purchase-money exceeded the mortgage debt, re-
demption could not be had except by a payment of
more than the amount of the mortgage.

The second question involved in the case relates to
the right of the plaintiffs in error to be heard at all as
against defendants in error who were purchasers from
the grantee in the sheriff's deed.   They bought the

property from the purchaser intermediate between the confirmation of the sale and the reversal of the order of confirmation by this court.  It is insisted by counsel for plaintiffs in error that the doctrine of *lis pendens* applies.  We differ with them in this contention.  No supersedeas bond was given on the proceedings in error from the order confirming the sale.

An order confirming a sheriff's sale is a final order within the meaning of our statute.  (*Koehler v. Ball*, 2 Kan. 160.)  According to the averments of the petition, the sale was confirmed by the court below and a deed ordered to be made and delivered to the purchaser.  In section 591, chapter 95, General Statutes of 1897 (Gen. Stat. 1889, ¶ 4652), it is provided :

"No proceeding to reverse, vacate or modify any judgment or final order rendered in the probate court or district court, except as provided in the next section and the fourth subdivision of this section, shall operate to stay execution, unless the clerk of the court in which the record of such judgment or final order shall be shall take a written undertaking, to be executed on the part of the plaintiff in error to the adverse party, with one or more sufficient sureties, as follows :  . . . *Second.*  When it directs the execution of a conveyance or other instrument, the undertaking shall be in such a sum as may be prescribed by any court of record in this state, or any judge thereof, to the effect that the plaintiff in error will abide the judgment, if the same shall be affirmed, and pay the costs."

Again, by section 19, chapter 83 (Gen. Stat. 1889, ¶ 4674), it is provided that a party seeking to vacate or modify a judgment or order may obtain an order suspending proceedings upon the execution of an undertaking to the adverse party to pay all damages that may be caused by granting the same.  It will be seen that, at the time the sale was confirmed, by the same order the court directed a deed to be made by the

sheriff and delivered to the purchaser. The defendants in error were not parties to any of the proceedings in the original foreclosure suit, but were purchasers from the grantee in the sheriff's deed. Even as to John Bushnell, however, we think that unless the effect of the order confirming the sale was stayed, his title would not be affected by a reversal of the order. It is important that property offered for sale in such cases bring the highest price after competition ; and to permit interference with the sale after confirmation upon a review of the proceedings in a higher court, which might be delayed years after the purchase, without supersedeas bond, would have the effect of making bidders timid, for they would remain in a state of insecurity as to their titles until the final disposition of the cause in the court of review. In Freeman on Judgments, 4th ed., section 484, it is said :

"The law permits judgments and decrees to be in force during the time in which appeals may be taken, and also while appeals are pending and undetermined, unless some bond or other security given as required by law operates to stay proceedings. Courts have always construed the law so as to impart confidence in judicial sales by protecting purchasers thereat from those ill consequences which the latter might suffer if the title acquired by them depended upon the freedom of prior proceedings from all errors of law. It was thought to be unjust to require purchasers to suffer for errors committed by the judges of subordinate courts, and impolitic, by making such a requirement, to discourage bidders at such sales and thereby to expose large amounts of property to the hazard of being sacrificed at nominal prices. Therefore, it is a rule nowhere disputed, that third persons purchasing at a sale made under the authority of a judgment or decree not suspended by any stay of proceedings, thereby acquire rights which no subsequent reversal of such judgment or decree can in any respect impair ; nor is

the fact that the purchaser was notified not to purchase, because the judgment was claimed to be erroneous, and that an attempt would be made to procure its reversal, of any consequence.''

The rule above stated tends to the security of titles. It is laid down in the books as a general rule that when the purchaser at a sheriff's sale is an innocent third person, and is a *bona fide* purchaser who has paid the purchase-price before obtaining knowledge of the reversal of the judgment, he shall be protected in his title to the property, notwithstanding the reversal of the judgment. (Rorer, Jud. Sales, §§ 1142, 1143 ; *Smith v. Dixon*, 27 Ohio St. 471 ; *Runge v. Brown*, 29 Neb. 116, 122, 45 N. W. 271 ; *McAusland v. Pundt*, 1 id. 211.)

The decision of the court below was correct. The petition did not state a cause of action. The judgment is affirmed.

JOHNSTON, J., concurring.


DOSTER, C. J. (dissenting) : I dissent from the judgment and opinion in this case that a mortgagor seeking to redeem, not from the mortgagee but from the purchaser at the mortgagee's sale, must pay the entire amount of the mortgage debt if any portion of it remains unsatisfied after the sale. I grant that the authorities support the doctrine announced, but they are wrong. They have no reasonable principle upon which to rest. In this case a real-estate mortgage was foreclosed, and a sale of the premises made to satisfy the judgment for the mortgage debt. Now, upon the making and confirmation of this sale (leaving out of view the subsequent orders setting such sale and confirmation aside), the title to the real estate vested in the purchaser subject to the mortgagor's

right of redemption, and the title to the residue of the judgment remained in the mortgagee. The fact that the orders of sale and confirmation were set aside so confuses the question discussed that it seems doubtful whether it really exists in the case. However, it is discussed as though it were in the case, and I do likewise.

The mortgagee and purchaser were strangers to each other. There was no privity of interest between them. The mortgagee got the sale money and the purchaser got the land. It was a matter of absolute indifference to the mortgagee whether the mortgagor redeemed the land from the purchaser. His doing so could nowise prejudice the mortgagee; his omission to do so could nowise benefit him. It was equally a matter of indifference to the purchaser whether the mortgagor ever paid the residue of the mortgage debt. His doing so could nowise benefit the purchaser; his failure to do so could nowise prejudice him. What equity was there, therefore, in the purchaser to demand as a condition to the redemption from him that the debtor pay a debt to a third person in which debt he had absolutely no interest and in the affairs of which person he had absolutely no concern? None. What equity was there in the mortgagee to attach the payment of his debt as a condition to the redemption of a piece of land out of the hands of a third person in which land and in the affairs of which person he had absolutely no concern? None. Equity requires that justice be done only to parties to a litigation and perhaps to those who may have interests in its subject-matter whether made parties or not; but it never requires the performance of an act beneficial only to some disinterested third person as a condition to the relief it affords to the parties before it. As well might

Evans v. Kahr.

a court attach to its allowance of a money judgment in favor of John Doe the condition that he first pay a judgment previously recovered against him by Richard Roe, as to attach to the right of redemption from a foreclosure sale at which a third person was purchaser the obligation to pay the deficiency judgment due the creditor. I doubt whether any court ever attempted to give a reason resting in equity for such last-mentioned character of decision.

My associates in their opinion in this case make no attempt to give an equitable reason for their decision, but fall back on the legal fiction which some judge aforetime invented, that the redemption in such cases is from the mortgage and not from the sale. This is a fiction which followed the abandonment of the old-time theory of mortgages. That theory was that the mortgagee was invested with the legal title to the mortgaged premises. Our theory is that a mortgage is merely a security, and vests no estate whatever in the land. Redemption in equity therefore is not from the mortgage, but from the sale made for its satisfaction. By sale and confirmation the title to the land becomes disencumbered of the mortgage lien. To subserve the equity of particular cases, the mortgage may be regarded after sale as merged in the purchaser's title, either wholly or to the extent of the purchase-money; this, however, not to benefit the mortgagee, but to protect the purchaser through subrogation or the like. Except for such purpose the mortgage becomes wholly extinguished as to the land sold.

The majority of the court in this case have fallen into the error of assimilating a mortgage to an instrument of title; worse even than that, they speak of it as though it were such instrument. The case they

undertake to make is "given away," to use the slang phrase, in this quotation from Mr. Justice Smith's opinion: "Redemption is regarded as a 'buying back' by the mortgagor of the legal estate after it has passed to the mortgagee." The legal estate never did pass to the mortgagee. Repeated decisions of our own court have so declared. My associates have actually returned to the ancient theory of a mortgage which has been repudiated in this state ever since the decision of *Clark v. Reyburn*, 1 Kan. 281, and which has likewise been repudiated by the courts in nearly every state in the union. At common law a mortgage did convey the legal title to the land. It was a conveyance with a defeasance. Upon condition broken the conveyance became absolute. In such case, however, the mortgagee did not sell. He entered into possession, if he had not already done so, and he was privileged to do so even before condition broken. Before condition broken the mortgagor had at law a right to redeem by paying the mortgage debt; in other words, of "buying back" the title which had passed from him, and at a later time the same right was given him in equity after condition broken. In neither of these cases could he buy back without payment of the mortgage debt, because, as stated, the mortgagee held the legal title, and of necessity the redemption was from the mortgage. It was not from the sale, because there was no sale. The mortgagee being invested with the legal title did not need to sell, at least by judicial decree. Hence there was no purchaser from whom to redeem. The mortgagee took possession and held it until the rents and profits and such sums as the mortgagor might pay worked a defeasance of the mortgagee's title and reinvested it in the mortgagor. The theory of redeeming from the mortgage was thus

Bank v. Manning.

in consonance with the actual fact. When the facts no longer exist the theory can of course no longer obtain. The ancient theories concerning mortgages and the equity of redemption therefrom are fully stated in *Chick v. Willetts*, 2 Kan. 390, 391. What is herein said concerning them is an exact restatement of that case. Instead of abandoning the ancient and disused doctrine, the court has endeavored to perpetuate it in the form of a legal fiction. I dissent from its use in determining the rights of suitors under the radically changed theory of a mortgage as a security instead of an instrument of title.

As to whether the execution of a supersedeas bond is necessary to create a *lis pendens*, as held by the majority of the court, I have no matured judgment. I have grave doubts as to the correctness of that portion of the decision. As to the incorrectness of the other I have none. It would seem too that a decision upon it was unnecessary. If the execution of a supersedeas bond is necessary to create a *lis pendens* in such cases as this, no need then to determine the rights in other respects of a redemptioner who fails to give the bond.