WILLIAM DOUGHERTY ET AL., APPELLANTS, V. EMMA KU-
BAT ET AL., APPELLEES.

FILED JANUARY 21, 1903.   No. 12,500.

Commissioner's opinion, Department No. 2.

1. **Stare Decisis.**  *Glynn v. Glynn,* 62 Nebr., 872, followed.

2. **Title to Act:** SPECIAL LEGISLATION: CONSTITUTION. Sections 70-73, chapter 73, Compiled Statutes (chapter 58, Session Laws, 1889; Annotated Statutes, secs. 10275-10278), as construed in *Glynn v. Glynn, supra,* are not unconstitutional as being broader than the title of the act, nor as special legislation.

3. **Redemption from Foreclosure Sale.**  A person who is entitled to redeem from a sale under decree of foreclosure to which he was not a party, must pay the full amount of the mortgage lien, though the land may have sold for a less sum.

4. **Tenant in Common:** FORECLOSURE SALE: REDEMPTION: PART PAYMENT: ENTIRE INCUMBRANCE. A tenant in common who was not made a party, and is therefore entitled to redeem from a foreclosure sale, may not compel the mortgagee or his successors to accept a part of the debt and relieve his interest only of the burden, but must offer to redeem the whole by discharging the entire incumbrance.

5. **Mortgage Debt:** EQUITABLE PROPORTION: PAYMENT: REDEMPTION OF INTEREST. But it is equitable to allow the plaintiff in an action for redemption to redeem his interest by paying his equitable proportion of the mortgage debt, and the defendant may, if he sees fit, allow the plaintiff to do so.

6. ——: ——: ——: ——: DEBT A UNIT: PARTIAL INTEREST: RIGHTS OF REDEMPTOR. As the rule that the debt is a unit, so that redemption of a partial interest only can not be imposed upon the mortgagee, is solely for the benefit and convenience of the latter, if he chooses to accept a portion of the debt and allow redemption of a partial interest, and such course is equitable under the circumstances, the holder of such partial interest can not insist upon redeeming the whole.

Syllabus by court; catch-words by editor.

APPEAL from the district court for Douglas county. Action by heirs of their intestate to redeem property sold under a decree of foreclosure. Heard below before FAW-CETT, J. Judgment for defendants. *Reversed.*

*Howard H. Baldrige, William A. De Bord, A. H. Mur-dock* and *J. M. Kerr,* for appellants.

*James H. Van Dusen, Timothy J. Mahoney, C. H. Kubat, Elmer E. Thomas, Thomas J. Nolan* and *Arthur C. Wake-ley, contra.*

POUND, C.

One John Dougherty mortgaged the property in controversy, a lot in the city of South Omaha, to the Nebraska Savings Bank. Afterwards he conveyed the property to his brother, Eugene Dougherty, a resident of Colorado. John Dougherty, the original mortgagor, and Eugene Dougherty, his grantee, each died intestate and without issue. There were, however, several brothers and sisters surviving, namely, Margaret Ahearn, formerly Dougherty, a British subject, resident in Ireland; Catherine Dougherty, a citizen of Massachusetts; Patrick Dougherty, a British subject, resident in Ireland; and Cornelius Dougherty, Ellen Dougherty and Edmund Dougherty, citizens of Nebraska. In addition, there were left surviving six children of a deceased brother, Michael Dougherty, who at his death was a British subject, resident in Ireland, of whom three were non-resident aliens. Among these were an Edmond Dougherty and a Margaret Dougherty. Suit was brought to foreclose the mortgage, in which personal service was had upon Cornelius "Doherty" and "Ella Doherty," and service by publication upon "Edward Doherty," and Patrick, Margaret and Catherine "Doherty," and answers were filed on behalf of such defendants. Decree of foreclosure was rendered in due course, and the

property was sold, for less than the mortgage debt, to the Packer's Savings Bank, under which the other defendants in the present suit claim as grantees. This suit is brought by children of Michael Dougherty, and by Edmund Dougherty, Ellen Dougherty, Patrick Dougherty, Margaret Ahearn, and Catherine Dougherty, brothers and sisters of said Eugene Dougherty, to redeem. The district court found for the defendants and the plaintiffs appeal.

Without passing on the questions raised as to the proceedings in the foreclosure suit and the sufficiency of the published notice in other respects, it is evident that both Edmund Dougherty, the brother, and Edmond Dougherty, the nephew, were not served by the notice to "Edward Doherty," and that the notice to "Margaret Doherty" could not apply both to Margaret Ahearn, formerly Dougherty, the sister, and Margaret Dougherty, the niece. Moreover, there still remain children of Michael Dougherty not made parties or attempted to be served in any way. As to these persons, it was urged below, and the district court held, that, being either non-resident aliens or the children of a non-resident alien, claiming through one who could not inherit, they were not heirs of Eugene Dougherty and had no interest in the property. This holding was prior to and is in direct conflict with the decision of this court in *Glynn v. Glynn*, 62 Nebr., 872, in which section 73, chapter 73, Compiled Statutes (Annotated Statutes, sec. 10278), was construed to mean that non-resident aliens were able to inherit estate in land within the corporate limits of cities and villages. If that decision is adhered to, the decree of the district court must be reversed, and it will be necessary to consider but one further point, as the other questions involved are not likely to present serious difficulties on another hearing.

Counsel for appellees have urged a reconsideration of *Glynn v. Glynn*, both upon the merits of the construction there adopted and on the ground that the statute, so construed, is unconstitutional. But the court appears to have given that cause full and careful consideration.

Hence we shall confine ourselves to the constitutional objections, as these alone present questions not already passed upon. It is argued first that the title of the act, "An act restricting non-resident aliens and corporations not incorporated under the laws of Nebraska, in their right to acquire and hold real estate," must necessarily limit its operation to restriction and prohibition, and can not cover a provision conferring a power to acquire and hold property in cities and villages, which aliens did not possess at common law. But it is obvious that chapter 15a, Compiled Statutes (Annotated Statutes, sec. 6950), of itself, without any supplementary legislation, was enough to exclude and prohibit ownership of real property by aliens, and that an act leaving them free to acquire and hold city property, while continuing their common-law disabilities as to agricultural lands, is, in substance, a restriction of their power as to ownership of lands, substituted for a prohibition. The legislature seems to have assumed that all men had a natural, if not a legal, right to acquire and hold property, and the meaning evidently was that such natural right was to be restricted by law. The common law gave no legal right, and the existing statute in this state, which was repealed, prohibited alien ownership without any exceptions. Hence there was no legal right to restrict. Taking the words in the sense in which they must have been intended, the title does not conflict with the construction this court has put upon the statute. The other objection is that a statute operating only upon lands without the corporate limits of cities and villages, and not extending to all lands in the state, is local and special legislation, contrary to section 15, article 3, of the constitution. It is well settled that the legislature may make a reasonable classification, resting on grounds of public policy, or some substantial difference of situation or circumstances that would naturally suggest the justice or expediency of diverse legislation with respect to the objects classified. *State v. Farmers & Mer-*

*chants' Irrigation Co.,* 59 Nebr., 1; *Cleland v. Anderson,*\* 66 Nebr., 252. If the statute operates equally upon all persons or objects of a class so constituted, it is enough. In this case there is an obvious and reasonable distinction between lots in the corporate limits of cities and villages and the larger tracts outside which, in this state, are agricultural or grazing lands. No particular mischief might flow from alien ownership of city property, while alien ownership of agricultural lands is a well-known source of political and social disturbance. It can not be said that the classification adopted is arbitrary or unreasonable.

Conceding that the plaintiffs, or some of them, are entitled to redeem, the question arises, what they may redeem, and how much they must pay. It is contended on their behalf that they may redeem the whole property from the sale, while appellees contend that they are tenants in common with the defendants as successors to the interests of their co-tenants under the foreclosure sale, and hence must contribute as to the portion of the mortgage debt satisfied by the sale, and redeem as to the remainder. We are unable to agree entirely with either. In such a case as this the redemption is from the mortgage, not the sale. Counsel for plaintiffs cite *Day v. Cole,* 44 Ia., 452, and *Tuttle v. Dewey,* 44 Ia., 306. But those cases arose under a practice where redemption is allowed, as of course, within a year after sale, and is a statutory redemption from the sale. They do not apply to suits to redeem governed solely by the principles of equity. When a person

---

\* Three opinions have been filed in this case, two by POUND, C., of date November 6, 1902, and July 3, 1903, respectively; the last by SEDGWICK, J., March 17, 1904. This last overrules the other two on a single point, and reverses the judgment; BARNES, J., dissents. Mr. Commissioner POUND's opinions held that the interest of a bankrupt in an action pending which he might sell or assign, was "property" within the meaning of the national bankrupt act rather than a "right of action," as that term is used in the same act, and held the cause pending to come under that definition of "property." Judge SEDGWICK's opinion held the cause of action—conspiracy—to be a tort and the injury personal to the plaintiff. As to the purpose for which it is cited in this case, *Cleveland v. Anderson* stands unreversed. —W. F. B.

24

who is entitled to redeem comes into equity to enforce his right, he must relieve the land of the incumbrance; and he can do this only by paying the full amount of the mortgage lien, though the land may have sold for a less sum. *Evans v. Kahr,* 60 Kan., 719, 57 Pac. Rep., 950; *Collins v. Riggs,* 14 Wall. [U. S.], 491, 20 L. Ed., 723; *Large v. Van Doren,* 14 N. J. Eq., 208; *Bradley v. Snyder,* 14 Ill., 263, 58 Am. Dec., 564; *Iowa County v. Beeson,* 55 Ia., 262, 7 N. W. Rep., 597. In *Collins v. Riggs, supra,* Bradley, J., says (p. 493) : "To redeem property which has been sold under a mortgage for less than the mortgage debt, it is not sufficient to tender the amount of the sale. The whole mortgage debt must be tendered or paid into court. The party offering to redeem proceeds upon the hypothesis that, as to him, the mortgage has never been foreclosed and is still in existence. Therefore he can only lift it by paying it. The money will be subject to distribution between the mortgagee and the purchaser, in equitable proportions, so as to reimburse the latter his purchase-money and pay the former the balance of his debt."

The plaintiffs undoubtedly took the proper course in offering to redeem the whole property, not merely their respective undivided shares therein. A tenant in common who was not made a party, and is, therefore, entitled to redeem from a foreclosure sale, may not compel the mortgagee or his successors to accept a part of the debt and relieve his interest only of the burden, but must offer to redeem the whole, by discharging the entire incumbrance. 3 Pomeroy, Equity Jurisprudence, sec. 1220; *McQueen v. Whetstone,* 127 Ala., 417, 30 So. Rep., 548; *Buettel v. Harmount,* 46 Minn., 481, 49 N. W. Rep., 250; *Lyon v. Robbins,* 45 Conn., 513; *Crafts v. Crafts,* 13 Gray [Mass.], 360; *Eiceman v. Finch,* 79 Ind., 511. Nevertheless, as it is equitable to allow the plaintiff in an action for redemption to redeem his interest by paying his equitable proportion of the mortgage debt, the defendant may, if he sees fit, allow the plaintiff to do so. *Kerse v. Miller,* 169

Mass., 44, 47 N. E. Rep., 504; *Van Vronker v. Eastman,* 7 Met. [Mass.], 157; *Gibson v. Orchore,* 5 Pick. [Mass.], 146. The rule that the debt is a unit so that redemption of a partial interest only, can not be imposed upon the mortgagee, is solely for the benefit and advantage of the latter. He can not be compelled to accept his money in driblets, and may insist upon payment of the entire mort-gage debt. But if he so insists, and one tenant in common relieves the entire estate of the incumbrance, the benefit accrues to the other tenants in common, subject to a charge upon their several interests for their respective shares of the incumbrance paid off. 3 Pomeroy, Equity Jurisprudence, sec. 1220. Hence it must be evident that the requirement that the whole incumbrance be discharged is merely an incident of the right of the tenant in common to relieve his individual share, arising from the fact that, with due regard to the equities of others, he can relieve it in no other way. If the difficulties arising from the rights of the mortgagee are obviated, there is no reason why he should be permitted or required to redeem more than his interest. We think, therefore, that if the mortgagee or his successors choose to accept a portion of the debt and allow redemption of a partial interest, and such course is equitable under the circumstances, the holder of such interest can not insist upon redeeming the whole.

We recommend that the decree be reversed, and the cause remanded for further proceedings in accordance with the views above expressed.

BARNES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause is remanded for further proceedings in accordance with said opinion.

REVERSED AND REMANDED.