PARCELLS, Appellant, *v.* NELSON et al., Respondents.

(No. 7,613.)

(Submitted November 7, 1936. Decided December 5, 1936.)

[63 Pac. (2d) 131.]

*Mr. M. L. Parcells,* Appellant, *pro se,* submitted a brief and argued the cause orally.

*Mr. P. R. Heily,* for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This is an appeal from a judgment on the pleadings in an action instituted to foreclose a third mortgage on a tract of land, determine plaintiff's right to redeem from a sale on fore-closure of the first mortgage, and to compel an accounting for the use and occupancy, the rents, issues and profits during the occupancy of the defendants, in order to fix and determine the amount necessary to be paid in order to redeem.

The facts set out in the pleadings are substantially as follows: Prior to January 2, 1924, Olof Nelson was the owner of the land in question, and on that date mortgaged it to one L. Y. Sikes to secure the payment of a note for $3,000. The mortgage was duly recorded and almost immediately assigned to one Smith Gilbert. On September 2, 1924, Olof Nelson conveyed the property, subject to the above mortgage, to his daughter Helga and her husband Walter J. Brown, for a consideration of $16,000, for which he took a mortgage and notes. Helga Brown died in 1926, leaving surviving her, her husband and four minor children.

On January 24, 1929, Walter J. Brown, widower, gave to L. Y. Sikes a third mortgage on the premises to secure the payment of three notes of $100 each, warranting his title to the premises, although he was not appointed administrator of his wife's estate and guardian of his four children until some time in 1933. These small notes probably had to do with interest on the first mortgage, the third mortgage running to Sikes being accounted for by the allegation in the answer that Sikes remained the owner and holder of the first mortgage, assigned to Gilbert as trustee. One of the notes was paid and the remaining two, with the third mortgage, were assigned to plaintiff on March 23, 1935.

Olof Nelson died, testate, on June 24, 1929, and these defendants, Emil Nelson and Herbert Nelson, nominated in his will, were duly appointed executors; subsequently they resigned and their brother, Alfred Nelson, and sister, Jean Nelson Neal, were appointed administrator and administratrix, respectively, of the estate with the will annexed.

Smith Gilbert commenced foreclosure proceedings on the first mortgage in 1933, making all parties in interest, except the owner and holder of the third mortgage, Sikes, parties thereto. On foreclosure sale the premises were struck off to Smith Gilbert for $4,617.62, and sheriff's certificate issued, which certificate was assigned to these defendants on December 11, 1934. The certificate of sale is dated January 20,

1934; it was filed on January 22, 1935, on which date sheriff's deed to these .defendants was duly executed, no redemption having been made or attempted by anyone.

The second mortgage was foreclosed in 1933–34, resulting in a sale to the administrator and administratrix of the Nelson estate for the sum of $10,000, and a deficiency judgment against Walter J. Brown for $9,761.45. Brown was later adjudged a bankrupt and duly discharged on July 29, 1935.

Having acquired the third mortgage and the notes secured thereby on January 22, 1935, this plaintiff recorded his assignment on August 5, 1935, and gave notice to these defendants in writing of his intention to redeem the property from the foreclosure, offering to pay to them the principal and interest on the first note and mortgage, with taxes paid, but demanding a verified accounting as to the value of the use and occupation of the premises, and the rents, issues and profits collected. Without waiting 30 days, plaintiff commenced action on August 16, 1935, for such accounting and to determine his right to redeem, with amount necessary to be paid for that purpose.

On service of summons, notice and demand, these defendants on August 31, 1935, tendered to plaintiff, and thereafter kept the tender good by deposit in court, a sum slightly in excess of the principal and interest due on the notes held by him. Thereafter defendants answered, claiming the notes and mortgage to be fully paid and extinguished by the tender and payment into court. On motion, the court took the view of the defendants and dismissed the action, with costs, on November 20, 1935.

On December 16, 1935, no accounting having been made within 30 days after notice and demand, or at all, and, disregarding the action commenced and dismissed, plaintiff instituted the present action. On January 4, 1936, the defendants made a ''tender into court'' of the amount necessary to satisfy plaintiff's note and interest, and again filed demurrer and motion to dismiss, both of which were overruled, and there-

after defendants answered setting up numerous alleged defenses. To this answer plaintiff filed a reply controverting the new matter alleged therein. Thereupon defendants moved for judgment on the pleadings, which motion was sustained and judgment entered accordingly. The plaintiff has appealed from the judgment, assigning error only on the granting of the motion and entering of judgment.

The sole question presented in the district court and here is as to whether, in view of the foregoing facts, the plaintiff had the right to redeem from the foreclosure sale had on the first mortgage.

On these facts the court found that, if redemption could be had, it could not be accomplished under statutory procedure because of the lapse of time, but only under plaintiff's equity of redemption; that if he, as junior lienholder, was to redeem from these defendants, who now hold the legal title to the premises, they, in turn, could redeem from him as holders of the owner's equity of redemption. The court further held that, if plaintiff did redeem, as a junior lienholder he would be compelled to foreclose his mortgage, and again redemption could be made from him. And finally the court held that, as the holders of the legal title to the premises—these defendants —had the right to pay the indebtedness on the notes held by plaintiff and thus discharge the lien of his mortgage, and that such payment was accomplished by the tender to plaintiff of the full amount due on the Sikes notes and the keeping of that tender good by the deposit of the amount into court. While the trial court thus distinguishes between plaintiff's "equity of redemption" and the statutory "right of redemption," the plaintiff is evidently confused by the misapplication of terms found in certain sections of our Codes.

The distinction and the misapplication of terms in the Codes are clearly pointed out by this court and should be readily grasped by members of the profession. (*Banking Corporation* v. *Hein,* 52 Mont. 238, 156 Pac. 1085, 1086; *Brown* v. *Tim-*

*mons,* 79 Mont. 246, 256 Pac. 176, 178, 57 A. L. R. 1122; *Dipple* v. *Neville,* 82 Mont. 280, 267 Pac. 214.)

Strictly speaking, it is only by the exercise of the "equity of redemption" that one may "*redeem,*" as that term means "to recover or regain, as pledged or mortgaged property, by the requisite fulfillment of some obligation, as by payment of what may be due." (Webster's New Int. Dictionary, 2d ed.; *Evans* v. *Kahr,* 60 Kan. 719, 57 Pac. 950, 58 Pac. 467.) This equity of redemption is "a substantive property right" (*Banking Corporation* v. *Hein,* above), "a valuable property right" (*Brown* v. *Timmons,* above), "which the mortgagor retains in the property; * * * it comes into existence when the property is hypothecated, and is terminated by a sale either under a power of sale or by virtue of a decree." (*Banking Corporation* v. *Hein,* above.)

In the foregoing cases it is said that the equity of redemption has its origin in chancery and was intended to temper the "harshness of the common-law mortgage," but it dates back 1500 years prior to the Christian era when Moses declared the law with respect to the rights of a brother "who hath waxed poor and hath sold away some of his possessions," and if he "sell a dwelling house in a walled city, then he may redeem it within a whole year after it is sold; within a whole year may he redeem it." (Lev. xxv, 29.)

Sections 8238 and 8239 of the Revised Codes but declare the existence of the equity of redemption and extend its beneficent provisions to protect the holder of a junior lien "when necessary for the protection of his interests."

This substantive right "is enforceable only in equity, and has nothing to do with our statute of redemptions." (*Sellwood* v. *Gray,* 11 Or. 534, 5 Pac. 196, 198.)

On the other hand, the right of redemption arises only upon a sale, and exists for the period fixed by law. It is not property in any sense of the term, but a bare personal privilege. It is purely of statutory origin, and can only be exercised * * * within the time and upon the conditions prescribed."

418

(*Banking Corporation* v. *Hein*, above; *Bangham* v. *Michael*, 179 Cal. 390, 177 Pac. 161.)

While equity may intervene to grant relief when it is shown that an owner was prevented from redeeming during the period of statutory redemption and thus grant an extension of the period (*Malvaney* v. *Yager*, 101 Mont. 331, 54 Pac. ▉ (2d) 135), the mere fact that a junior lienholder was not made a party to the foreclosure of the senior mortgage neither increases nor diminishes his statutory right of redemption. (*Hummel* v. *Citizens' B. & L. Assn.*, 38 Ariz. 54, 296 Pac. 1014.)

Having failed to exercise his statutory right within time, ▉▉ it was lost to Sikes before his assignment to this plaintiff, but the equity of redemption remained and was still available, and, when the assignment was made, this right passed to plaintiff (*Wemple* v. *Yosemite G. M. Co.*, 4 Cal. App. 78, 87 Pac. 280); he could, therefore, redeem, but not by invoking the statutory procedure for the exercise of the right of redemption. It has been said that on such a redemption, an accounting for rents and profits may be compelled (Wiltsie on Mortgage Foreclosure, 3d ed., sec. 180) and in one of the ancient cases cited in support of the text (*Ten Eyck* v. *Casad*, 15 Iowa, 524), the reason for the rule is given as that "if his debt is satisfied, that is all he has a right to ask as against other parties, strangers to the proceedings, who are interested in the property." On the other hand, it has been held that, as the accounting provided for by statute is a part of the provisions respecting the right of redemption, such a one as this plaintiff cannot invoke that remedy, but is left the right to foreclose his mortgage (*Hummel* v. *Citizens' B. & L. Assn.*, above), but this court has declared that "those who have acquired liens inferior to that to satisfy which the sale was made shall resort to the process of redemption, and not to levy and sale, in order to protect themselves from loss." (*Hamilton* v. *Hamilton*, 51 Mont. 509, 154 Pac. 717, 723.) On a statutory redemption the provisions of section 9448, Revised Codes, for credit of rents and profits,

after demand, would apply, but here the time for such redemption has expired and there is nothing in the record to toll the statute; there was nothing left to this plaintiff but his equity of redemption, to be exercised only "in order to protect [him] from loss."

Were we to hold that the provisions of section 9448 should be invoked on resort to the process of equitable redemption, the demand made was ineffectual for failure to comply with the strict statutory requirements (*Leonard* v. *Western*, 74 Mont. 513, 241 Pac. 523), in that the demand was not made within the statutory period of one year. (*Hummel* v. *Citizens' B. & L. Assn.*, above.)

The purpose of preserving to a lienholder an equity of redemption is to protect him from loss, and if such a one receives all that he is entitled to, his lien is extinguished and, with it, his equity of redemption. (*Leonard* v. *Western*, above.) On the other hand, these defendants acquired the legal title to the premises (sec. 9441, Rev. Codes; *Leonard* v. *Western*, above; *Lepper* v. *Home Ranch Co.*, 90 Mont. 558, 4 Pac. (2d) 722), subject to the lien of plaintiff's mortgage, and the equity of redemption with respect to it was available to them for the purpose of clearing their title (*O'Brien* v. *Perkins*, (Tex. Civ. App.) 276 S. W. 308, as modified in *Shelton* v. *O'Brien*, (Tex. Com. App.) 285 S. W. 260).

The defendants tendered to plaintiff an amount which is conceded sufficient to discharge the debt, and kept the tender good by deposit in court, but this tender did not operate to discharge the lien of plaintiff's mortgage as defendants were strangers to the contract creating that mortgage debt and did not assume it on purchase of the property, and, consequently, a personal action on the debt would not lie against them. (*Brunswick R. Co.* v. *University Inv. Co.*, 43 Utah, 75, 134 Pac. 608.) However, such tender does have this effect: It stops the running of interest and subjects the mortgagee, refusing to accept, to costs of suit. The party, or parties, making the tender and depositing the money in

420

court may sue to compel an acceptance and the satisfaction of the mortgage. (*Brunswick R. Co.* v. *University Inv. Co.,* above.) This these defendants must do to clear their title, if the plaintiff still refuses to accept the deposit. The trial court did not err in dismissing plaintiff's action, but did err in declaring the debt and mortgage paid and discharged as a lien on the property.

The cause is remanded to the district court of Stillwater county with direction to modify the judgment to conform to this opinion, and, as modified, the judgment will be affirmed, each party to pay his own costs on this appeal.

ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent, did not hear the argument and takes no part in the above decision.

Rehearing denied December 15, 1936.