DANIEL WOODWARD, ADMINISTRATOR OF LYMAN BENSON, v. CLARISSA COWDERY AND RUFUS H. HYDE.

[IN CHANCERY.]

### Mortgage.

An assignee of a mortgage having obtained a decree of foreclosure, and having promised a subsequent mortgagee that he might redeem after the expiration of the decree, provided the mortgageor failed to redeem, would be estopped in equity from denying the right of said mortgagee to redeem; and the same would apply as to a purchaser of the decree, cognizant of said mortgagee's claim and right to redeem under the decree.

But the purchaser of the decree, under the circumstances of this case, after the expiration of the decree, being himself a subsequent mortgagee, thereby redeemed the property, and the redemption opened the decree, and secured to the mortgagees and all persons interested in the property their respective rights according to the priority of their respective claims in the premises.

BILL IN CHANCERY.   The bill alleged that David W. Cowdery on the 26th of April, 1856, was indebted to Lyman Benson in the sum of $780, specified in three promissory notes, each dated April 26, 1856, payable one in six, one in twelve and one in eighteen months from date, with interest annually ; that in order to secure the payment of the same said Cowdery and his wife, Clarissa Cowdery, on said 26th of April, mortgaged certain lands in Royalton to said Benson ; that said Benson deceased about the 29th of March, 1860, and the orator was duly appointed administrator of said Benson's estate ; that at the time of giving said mortgage to said Benson by said Cowdery and wife, the state treasurer held a mortgage of said lands, previously executed by said Cowdery and wife to the South Royalton Bank, which said bank had assigned to said treasurer for banking purposes under the law of this state, to the amount of about $800 ; that said bank proved to be insolvent, and all the real estate which had been mortgaged to it and assigned to the state treasurer, was held to respond to the redemption of the bills of said bank ; that all the assets of said bank, including the mortgage of said lands, were delivered to Heman Carpenter, who was duly appointed receiver of said bank ; that said Carpenter, in the name of the state treasurer, obtained a decree of foreclosure of said mortgage so assigned to the said treasurer ; that said Benson frequently applied to said Cowdery . and requested him to pay said decree, and said Cowdery promised said Benson that he would see that it was paid in time ; that during the pendency of the suit to obtain said decree, and during the time allowed by said decree for redemption, said Benson urged said Carpenter to get his pay from said Cowdery if possible, and informed said Carpenter that he, Benson, was desirous of redeeming said land and paying the decree if Cowdery did not ; that said Carpenter then promised Benson that he should not be injured and might redeem if Cowdery did not, and his rights should be protected ; that said Benson, relying on the promises of Carpenter and Cowdery, did not pay said decree and redeem said land, but after the time of redemption had expired, said Benson called on Carpenter and learned that said decree had not been paid by Cowdery, and Carpenter again assured him that he,

32

Benson, might pay said decree and he, Carpenter, would receive from Benson the money due on said decree as he had previously promised; that Benson thereupon commenced negotiations to raise the money when he died suddenly; that the orator as administrator of Benson's estate called on Carpenter and offered to pay him the money on said decree, and asked said Carpenter to discharge or assign said mortgage upon which said decree was predicated; that Carpenter finally promised the orator that he would receive the money and discharge or assign said mortgage in June following; that the orator afterward saw Carpenter and offered to pay him the amount due on said decree, but he refused to receive it, and refused to discharge or assign said mortgage; that said Cowdery afterward procured Rufus W. Hyde to pay to said Carpenter the amount due on said decree, and said Carpenter thereupon transferred the decree to said Hyde; that when Hyde paid said decree, and long before, he and Cowdery and wife were fully informed of all said facts, and knew that Benson had prepared to pay said decree, and that Carpenter had promised, both before and after the expiration of the time of redemption, to receive it, and that Benson had delayed payment, relying on Cowdery and Carpenter's promises; that Cowdery and Hyde gave Carpenter a bond of indemnity, or some contract to pay Benson's estate whatever damages it should suffer, and that Carpenter informed Hyde, before Hyde made said payment, that Benson's mortgage must be paid before the title of Hyde could be perfected in the premises; that Cowdery and wife are and long have been insolvent, but have been since the date of said mortage and still are in possession of said premises and have taken the whole profits to themselves; that the orator has always been, and still is, ready to pay said decree; that said notes are still unpaid, and a great amount of interest thereon.

PRAYER that said Cowdery and wife and said Hyde be ordered to pay said notes, or else said Hyde be ordered to render an account of the rents and profits of said lands for all the time since he paid said decree, and that the orator be permitted to redeem said lands by paying for said Hyde the balance of said decree after deducting said rents and profits, and said Cowdery and wife

and said Hyde and all persons claiming under them, be foreclosed from all equity of redemption to said premises and every part thereof, and that a writ of possession may be awarded to the orator, and that he may by decree hold and enjoy the premises, etc.

The defendant Hyde in his answer said, that at the time of the purchase of said decree by him, he was, and still is, the owner of the lands and premises described in the orator's bill, and that he purchased said decree and mortgage to quiet in himself the title to said premises for his own benefit exclusively ; denied that, at the time he purchased or before that time, he was informed of the intention or purpose of said Benson, if he had any, or of the orator, in relation to the payment of said decree, and denied that he had any knowledge of any promise of said receiver to said Benson, or to the orator, or that he had any knowledge that Benson had delayed payment of said decree, relying on any promise of said receiver ; denied that there was any understanding or agreement at any time made by him, or by any one for him, with Cowdery, in regard to the purchase of said decree, or that the purchase was made by the procurement of said Cowdery, and says there was no bond or contract entered into by this defendant to pay Benson's estate any damages whatever, and denied that he was ever informed by said Carpenter that the mortgage of Cowdery and wife to Benson must be paid before the title to the premises would be perfect in this defendant ; admits that Cowdery and wife are residing on said lands but says that Cowdery is managing the same as this defendant's agent and hired servant ; says that in the purchase of said decree and mortgage, he acted upon his own responsibility, without any contract or agreement with Cowdery that the purchase should enure to said Cowdery's benefit, and without any understanding or intimation from said Carpenter that he had made any promise to Benson or the orator in relation to the payment of said decree by them after the expiration of the same.

As to the other matters alleged in the orator's bill, this defendant admitted the same or rested them upon the orator's proof.

The answer was traversed and testimony taken by both parties.

It appeared that said Carpenter was the solicitor for the state treasurer in the proceedings to obtain said decree of foreclosure ; also that on the 18th of May, 1858, said Cowdery quitclaimed said lands to the defendant, Rufus H. Hyde, to secure him for his indebtedness to said Hyde and for what he might become indebted to him. The material facts established by the testimony are stated in the opinion of the court.[*]

*Dudley C. Denison,* for the orator.

*C. M. Lamb* and *A. P. Hunton,* for the defendants.

The opinion of the court was delivered by

WILSON, J. The principal questions in this case, are, 1st, whether the alleged agreement between Carpenter and Lyman Benson was entered into by which Benson should have the right to redeem the property after the expiration of the time fixed by the decree. 2d, whether Hyde purchased said decree and property without notice of the alleged right of the estate of Benson to redeem the premises, or whether Hyde, as a subsequent mortgagee, merely paid the decree and thereby redeemed the property under it in order to protect and save his subsequent mortgage security.

There are many circumstances disclosed by the testimony which have an important bearing upon the main questions in dispute. It appears that Carpenter was receiver of the bank and solicitor for the orator in the proceeding in the name of the state treasurer to enforce payment of the debt secured by the mortgage to the bank. Benson had a large claim against Cowdery secured by subsequent mortgage on the same property, and the property was ample security for both mortgages. Benson had no security except on the land covered by the decree on the bank mortgage ; Cowdery and wife were insolvent before and at the time named in the decree for its expiration, and of all this Carpenter was cognizant. Carpenter, as receiver of the bank and solicitor for

---

[*] The papers sent to the reporter did not show what the decree was, or when or by whom made. The bill was brought in Windsor county.

the orator in these proceedings, and while having control of the decree in question, by consent of the parties interested in that decree, received of Hyde the amount of the decree, the same as he would have done if Hyde, or any other person interested in the redemption of the property, had made payment before the decree expired. The nature of that transaction and the declarations of Carpenter to Woodward upon the occasion of receiving said payment from Hyde, afford considerable evidence tending to show that Carpenter made the alleged agreement with Lyman Benson. We think the evidence shows very clearly the agreement by Carpenter with Lyman Benson before the expiration of the time of redemption, to receive pay of him in satisfaction and discharge of said decree as against said Benson, after the expiration of said time of redemption; and that in consequence of said agreement, and relying thereon, said Benson did not redeem the property under said decree before its expiration. The evidence shows that the money was offered to Carpenter in behalf of Benson's estate in April or May, 1860, that the offer was repeated, and the administrator has always been ready and willing to pay the same, and is still so, in satisfaction of said decree in accordance with the agreement between Carpenter and Benson. Carpenter, as receiver of the bank and attorney for the parties interested in that mortgage and decree, had competent authority to make with Lyman Benson the alleged agreement, and its validity is not denied by the defendants. Carpenter would in equity be estopped, if he held said decree, from denying the right of Benson's estate to redeem the property.

It is claimed by the defendants' counsel that said Hyde stands in the situation of a purchaser of the legal title for value and without notice of the prior equity of Benson's estate. But the evidence we think does not sustain this position of the defendants. If the evidence would warrant us in finding that Hyde actually purchased the decree and obtained the legal title to the property, still the evidence is abundant to show that he was, before and at the time he took the assignment from Carpenter, cognizant of the claim in behalf of Benson's estate, and of the right in that estate to redeem the property under that decree, after its expiration. In

this view of the case, Hyde would be affected with all and the same rights that Benson and his estate had against Carpenter himself at the time of the assignment to Hyde, and Hyde would be estopped from denying the right of Benson's estate to redeem the property in accordance with the alleged agreement between Benson and Carpenter. But upon the evidence, we think it is clear that Hyde, in virtue of the assignment to him by Carpenter, did not become the owner of the property. The deed from the defendant Cowdery to said Hyde, under date of May 18, 1858, was in effect a mortgage to secure the indebtedness of Cowdery to Hyde, and that indebtedness existed at the time Hyde took the assignment from Carpenter. Hyde's mortgage was subsequent to that of Benson, and he was interested in the redemption of the property, not only under the bank decree, but also under Benson's mortgage. It seems to us that the transaction between Carpenter and Hyde was with reference to the redemption of the property under that decree ; it was the equity of redemption in, and not the legal title to, the premises that constituted the subject of the contract between them. This being so, it is not material under the circumstances whether Hyde was or was not cognizant of said agreement between Carpenter and Benson, at the time he took said assignment. Hyde being interested as subsequent mortgagee, could, by consent of Carpenter, redeem the property by paying the decree. And by the consent of Carpenter, Hyde did pay the decree ; he redeemed the property under that decree; but the redemption opened the decree and gave to the mortgagees, to the assignee of the bank or treasurer's decree, and to all persons interested in the property, their respective rights according· to the priority of their respective equities in the premises.

We are of opinion that the orator is entitled to the relief prayed for in his said bill of complaint. The *pro forma* decree of the chancellor is reversed and the cause is remanded to the court of chancery with instructions that a decree be entered for the orator that, unless the said Cowdery and wife, or the said Hyde, shall elect to pay and do pay to the orator, for the benefit of the estate of said Benson, the amount due on the three promissory notes to said Benson, secured by said mortgage as set forth

Woodward, administrator, *v.* Cowdery et al.

in said bill, and the orator's costs of this suit, within such time as the court of chancery shall order and direct, he the said orator be allowed to redeem the said property under said treasurer's decree, so assigned to said Hyde, by paying the sum due in equity therein, with the interest thereon; the rents and profits of the premises since possession was taken under the decree so assigned to said Hyde, and the amount of insurance money paid for loss on buildings embraced in said mortgage, to be ascertained and deducted from said last mentioned decree, in determining the amount due said Hyde thereon.