[Civ. No. 180.   Third Appellate District.—July 9, 1906.]

E. H. WEMPLE, Respondent, v. YOSEMITE GOLD MINING COMPANY et al., Defendants; F. F. BRITTON et al., Appellants.

JUNIOR MORTGAGE—DESCRIPTION OF MINE—IDENTITY—DEEDS—REFERENCE TO VOID LOCATION—INTENTION OF PARTIES.—Where a senior mortgage described the "Slap Jack Mine" under an original location thereof and the identity of property included in a junior mortgage is involved, which described the property as the "Jim Blaine Mining Claim, being the same property located" by a person named, whose relocation thereof referred to is void, though the two claims admittedly included the same ground, and a deed thereof is referred to which describes the "Jim Blaine" or "Slap Jack Mine," and it also appeared that at the date of the junior mortgage, the mortgagor was grantee in another deed of nine-twentieths of the original location of the "Slap Jack Mine": *Held*, that it was clearly the intention of the parties to include the latter's interest in

the junior mortgage, and not to embrace exclusively the interest in
the relocation, and in the grant thereof to the mortgagor.

ID.—PURPOSE OF DESCRIPTION—SUFFICIENCY—PROOF.—The purpose of ·
the description of property mortgaged or deeded is to identify the
property, and not to indicate the source of title. The property in
a deed or mortgage may be sufficiently described by appropriate ref-
erence to any duly recorded document or public record, containing
the required description; and proof of the description is complete
by the introduction in evidence of such document or record.

ID.—FORECLOSURE OF SENIOR MORTGAGE—PARTIES—COMMON SOURCE OF
TITLE—SENIOR TITLE LITIGABLE ON FORECLOSURE OF JUNIOR MORT-
GAGE.—Where, on foreclosure of the senior mortgage, the holder of
the junior mortgage of record was not a party, upon foreclosure of
the junior mortgage as to nine-twentieths of the common source of
title, it cannot be held that the title acquired under the senior fore-
closure by redemptioners therefrom is so superior, paramount and
adverse to the title mortgaged to the junior mortgagee that it can-
not be litigated upon the foreclosure of the junior mortgage by an
assignee thereof.

ID.—RESULT OF FAILURE TO MAKE JUNIOR MORTGAGEE A PARTY.—The re-
sult of the failure to make the junior mortgagee a party to the
foreclosure of the senior mortgage was to leave the junior mortgage
and the rights of the junior mortgagee and his assignee unaffected,
as to the right of redemption therefrom, and unless, by some means,
the nine-twentieths interest covered by the junior mortgage, and in-
cluded in the prior mortgage, was lifted from the lien thereof, it
would remain subject thereto.

ID.—EFFECT OF REDEMPTION BY DEBTOR OR SUCCESSORS IN INTEREST.—
When redemption from a foreclosure sale was made by the execution
. debtor, or his successors in interest, the effect is merely to termi-
nate the same, and restore the property to its original condition,
and the receipt of the redemption in money discharges the judg-
ment of foreclosure, sets aside all the proceedings thereunder, and
places the parties in the same position they were in before suit
brought, except that the debt is paid.

ID.—SUBROGATION OF SUCCESSORS IN INTEREST TO LIEN OF PRIOR MORT-
GAGE—SUPERIOR EQUITY—BURDEN OF PROOF.—The principle that
upon redemption by successors in interest they may be subrogated
to the lien of the mortgage foreclosed to the extent necessary for
their equitable protection, applies only where the equity is shown
to be superior; and the burden of proof is upon him who claims
superior equity to show it.

ID.—SUPERIOR EQUITY NOT SHOWN.—Where, upon foreclosure of the
junior mortgage, the redemptioners from the prior mortgage, made
defendants, do not allege or prove that they became successors in
interest for the purposes of such redemption, of the nine-twentieths

interest included in the junior mortgage, prior to the deed thereof to the mortgagor, which was on record before any redemption proceedings were begun, and the court found that that interest was included in the junior mortgage and was discharged from the lien of the prior mortgage by payment of the debt, and no want of equity is shown in such prior deed, the equitable principle of subrogation cannot be invoked by such defendants.

APPEAL from an order of the Superior Court of Tuolomne County denying a new trial. G. W. Nicol, Judge.

The facts are stated in the opinion of the court.

H. A. Blanchard, for Yosemite Gold Mining and Milling Company, Appellant.

J. P. O'Brien and Crittenden Hampton, for F. F. Britton, Appellant.

W. C. Kennedy, F. W. Street, and William M. Beggs, for Respondent.

CHIPMAN, P. J.—Foreclosure of mortgage. Plaintiff had judgment from which and from the order denying their motion for a new trial, all the defendants, except the Yosemite Gold Mining Company, appeal. After the complaint was filed, the Yosemite Gold Mining and Milling Company was made a party defendant as the grantee of the Yosemite Gold Mining Company. The Yosemite Gold Mining Company (hereinafter referred to as defendant company) executed its mortgage to one Joseph Marsden, plaintiff's assignor, on October 25, 1899, which was, on October 27, 1899, duly recorded in the office of the county recorder of Tuolumne county. The land mortgaged embraced several mining claims. and, among them, a claim called the "Jim Blaine Mine," also called the "Slap Jack Mine." Defendants other than the defendant company were alleged to have or to claim some interest in the premises. They disavowed any interest in any of the claims, except the "Slap Jack Mine," which they averred included the same ground as the "Jim Blaine Mine." As to this mine they averred that their title was superior and adverse to any title of the defendant company, the mortgagor, or of plaintiff; they also averred that plaintiff's said

mortgage was without efficacy as a lien upon their said
mine; also that a first and prior mortgage upon the ''Slap
Jack Mine'' had been foreclosed and the property sold there-
under, and that whatever title the defendant company, or
any person from whom it claimed, ever had, was ''lost and
merged in the foreclosure of the first and prior mortgage.''
The court found that a nine-twentieths interest in the ''Slap
Jack Mine'' was encumbered by the mortgage sued upon,
and decreed foreclosure thereof accordingly. It is from this
part of the judgment that defendants appeal. The so-called
''Slap Jack Mine,'' the mortgaged premises, was located by
one Walter J. Coyle on January 1, 1896. An attempt was
made to relocate the same ground as that embraced in the
''Slap Jack Mine,'' under the name of ''Jim Blaine Mine,''
by one McWhirter, on January 1, 1899, but it was found by
the court to have been ineffectual, the ground not then being
open to location by anyone, and this finding is not chal-
lenged. By deed dated August 6, 1896, Coyle conveyed an
undivided one-fourth of this mine, each, to Harry Argall, F.
L. Argall, B. Griswold and F. L. Emerson. By deed, dated
August 6, 1896, the Argalls conveyed to Jacob Miller an un-
divided one-twentieth interest in the mine. The title then
stood nine-fortieths in each of the Argalls, ten-fortieths in
defendant Griswold, ten-fortieths in defendant F. L. Emer-
son and two-fortieths in defendant, Miller. The court found
that at the commencement of this action there was, and still
is, pending a suit to quiet the title of the defendants, the
Emersons, Britton and Miller as plaintiffs against the Ar-
galls, Yosemite Gold Mining Company and Yosemite Gold
Mining and Milling Company, and that the action was at the
time of the present trial on appeal to the supreme court
and undecided. On June 23, 1897, the Argalls, Griswold and
said F. L. Emerson (Miller not joining) mortgaged their in-
terest (being nineteen-twentieths) to secure a promissory note
for $1,600 executed to said Joseph Marsden who, on October
25, 1899, assigned the note and mortgage to one H. A. Blanch-
ard. As certain rights are now claimed by appellants to
have arisen out of this mortgage, by reason of its antedat-
ing the mortgage in suit, it becomes necessary to trace its
history. Blanchard brought suit to foreclose on November
5, 1899, making the mortgagors parties defendant and also
E. L. Emerson, Jacob Miller, F. F. Britton and A. L. Emer-

4 Cal. App.—6

son, alleging that the last four named defendants claimed some interest in the mine. The Argalls, E. L. Emerson, and Miller, not answering, their default was duly entered. The other defendants answered. Neither Marsden, mortgagor of the mortgage in the present suit, nor his assignee, Wemple, was made a party defendant to the Blanchard foreclosure suit, although the mortgage now in suit was of record when the Blanchard foreclosure suit was commenced. In this latter action decree of foreclosure was duly entered February 23, 1900, and sale by commissioner, H. A. Hardinge, of nineteen-twentieths interest in the mine was ordered and afterward made to Peter Berg on March 31, 1900, and certificate of sale was issued to him. Within twelve months, certain defendants in that action, namely E. L. Emerson, F. F. Britton and A. L. Emerson, successor in interest of said judgment debtors, tendered to Peter Berg and also to Commissioner Hardinge the money necessary to redeem from the foreclosure sale, and demanded the assignment of the certificate of purchase, but were refused. Thereafter, to wit, on March 27, 1901, these same three defendants commenced an action to enforce redemption, claiming to own nineteen-twentieths interest in said mine as successors of the Argalls, Griswold, and F. L. Emerson, as judgment debtors in the Blanchard foreclosure action. The defendants in the redemption suit answered denying most of the allegations in the complaint set forth, and specifically denying that plaintiffs were, at the commencement of the suit, or ever were, the owners or interested in the property in question. Defendants subsequently filed an offer to allow said Britton, E. L. and A. L. Emerson to redeem said mine upon payment of a certain stated amount. E. L. was the husband of Mrs. A. L. Emerson. This offer was accepted and, by consent, judgment for the redemption was entered in favor of Britton, Emerson and Emerson and they received the certificate of sale and on September 7, 1901, a judgment was entered adjudging that Britton, Emerson and Emerson had redeemed said mine from said foreclosure sale within the time allowed by law, as successors in interest of the judgment debtors, the Argalls, Griswold and F. L. Emerson, and that the judgment and decree has become final and has been fully satisfied; that on November 6, 1899, when said foreclosure action was commenced by Blanchard, the records of Tuolumne

county did not show that the Yosemite Gold Mining Company had, or claimed to have, any interest in or to said mine, and that on that day there was no conveyance of record from the Argalls, Griswold, F. L. Emerson, or Jacob Miller to said last-named mining company.   But the court found in the present case, and the evidence was, that the Argalls executed and delivered to the Yosemite Gold Mining Company, on October 2, 1899, a conveyance of nine-twentieths interest in said mine and that the said deed was duly recorded January 12, 1900.   This is the source of the interest of the Yosemite Gold Mining Company in the mortgaged premises. The court also found that neither the mortgagee, Marsden, nor his assignee, Wemple, the present plaintiff, of the mortgage made October 25, 1899, now sought to be foreclosed, was made a party to foreclose the Blanchard mortgage and neither of them appeared in that action, and neither of them was a party to, or appeared in the action to redeem from the judgment in the Blanchard foreclosure.   The court found that neither E. L. Emerson nor F. L. Emerson had any interest in the premises at the commencement of this action. It appeared also that Peter Berg conveyed to defendant, Yosemite Gold Mining Company, the "Jim Blaine," or "Slap Jack Mine," on June 1, 1899, recorded October 13, 1899.

The court found as conclusions of law: That the undivided nine-twentieths interest of the "Slap Jack" mining claim is subject to plaintiff's mortgage; that the claims of the Yosemite Gold Mining Company, and the Yosemite Gold Mining and Milling Company are, and each of them is, subsequent to the claim of plaintiff and his said mortgage; that the undivided eleven-twentieths interest of said mine is owned by defendants, Mrs. A. L. Emerson, F. F. Britton and Jacob Miller, and is not subject to said mortgage.

Appellants contend that the evidence is insufficient to justify the decision that nine-twentieths interest in the "Slap Jack Mine" was subject to the mortgage sued upon, because: First, the "Slap Jack Mine" was not described in the mortgage with sufficient definiteness; second, the title of appellants is superior to the mortgagor's title; third, whatever interest or equity of redemption the Yosemite Gold Mining Company, mortgagor of the mortgage sued upon, ever had in the mine in question, was foreclosed by the proceedings had in the foreclosure of the first, or Marsden mortgage, by

Blanchard; fourth, there is a still further claim made by appellants: Considering that plaintiff's mortgage created a lien on the Argall interest, equity will keep alive the Blanchard mortgage as a protection to the redemptioners from the Blanchard foreclosure.

1. The description of the controverted premises stated in the mortgage of defendant company was as follows: "The Jim Blaine Mining Claim, being the same property located by R. S. McWhirter on Jan. 1, 1899, of Record in Book 10, Page 271, Quartz Claims, Tuolumne County Records." Then follows the description of several other mining claims, at the close of which the mortgage continues: "All of said mines and mining property being the same described in that deed of conveyance made by Peter Berg to the Yosemite Gold Mining Company on June 1, 1899, of Record in Book A of deeds, Vol. 41, page 521, recorded on October 3, 1899, Tuolumne County Records." It is urged that because the location of the "Jim Blaine Mine" by McWhirter was ineffectual for any purpose, as found by the court, and because the deed of Peter Berg conveyed nothing, he having no interest to convey, the mortgage failed to describe or refer to the "Slap Jack Mine" and hence mortgaged no part of that mine. It is not disputed that the two designations referred to the same ground; it was so alleged by defendants and it so appeared from the testimony of defendants and was so understood by all parties. We do not think the mortgage was intended to embrace only such interest as the mortgagor acquired through the Berg deed or through the McWhirter location. When the mortgage was executed the defendant company held the deed of the Argalls to the "Slap Jack Mine" thus described. It seems to us that the description used in the mortgage was intended to identify the property mortgaged by reference to documents which referred to the same property as was referred to in the Argall deed. As the "Jim Blaine Mine" embraced precisely the same ground, we think there can be no mistaking of the intention of the mortgage to include this ground. The purpose of the description of property mortgaged or deeded is to identify the property, and is not to indicate the source of the title. The property in a deed or mortgage may be sufficiently described by appropriate reference to any duly recorded document or public record containing the required description and proof

of the description is complete by the introduction in evidence of such document or record.

2. It is contended that the title of appellants is superior, paramount and adverse to the title mortgaged and hence cannot be litigated in this action.

The point is grounded upon the alleged fact that appellants are the owners of the "Slap Jack Mine" through the locator Coyle, while the mortgagor, the defendant company, claims the "Jim Blaine Mine" through McWhirter. We do not so understand the evidence. The McWhirter location was void. Defendant company claims through the Argalls, whose source of title in the Coyle location is the same as that of appellants. The real controversy in the case is as to the relative rights of the parties arising out of the Blanchard mortgage foreclosure and the Wemple, or plaintiff's, mortgage foreclosure. The court decreed that certain defendants, Britton, Mrs. A. L. Emerson and Miller, were the owners of eleven-twentieths of the mine in question (about which there is no controversy), and that the remaining nine-twentieths interest therein was subject to plaintiff's mortgage, being the interest of the Argalls which they had conveyed to the defendant company.

3. The vital question in the case is thus stated by appellants: That whatever interest or equity of redemption the defendant company, the mortgagor, or the respondent, ever had in the "Slap Jack Mine," was foreclosed and lost by the decree, sale and proceedings had in the foreclosure of the Blanchard, or first mortgage.

The point made that the mortgage of defendant company did not sufficiently describe the mine, has been already disposed of. The second reason given by appellants in support of their contention raises the question, namely, that whatever title the defendant company had was foreclosed and lost by the foreclosure of the first or Blanchard mortgage. The evidence is undisputed that the Blanchard mortgage was prior in date and recordation to plaintiff's mortgage. But when the Blanchard foreclosure suit was commenced (November 6, 1899), the second or plaintiff's mortgage was of record (October 29, 1899), and defendant company, the mortgagor, held a deed from the Argalls, executed and delivered October 2, 1899, a month before the Blanchard foreclosure suit was commenced; it was, however, not recorded

until January 12, 1900. Blanchard was charged with constructive notice of plaintiff's mortgage, but he failed to make either plaintiff or his assignor a party to his foreclosure. Section 726 of the Code of Civil Procedure refers to persons having a lien on the mortgaged premises as well as a conveyance thereof. The result of this failure was to leave the junior mortgage and the rights of the junior mortgagee and his assignee unaffected. (*Carpenter* v. *Branham,* 40 Cal. 234; *Henderson* v. *Grammar,* 66 Cal. 332, [5 Pac. 488]; *Savings Bank* v. *Central Market,* 132 Cal. 36, [54 Pac. 273]; *Hibernia Sav. Bank* v. *London & L. Ins. Co.,* 138 Cal. 260, [71 Pac. 334]; *Frates* v. *Sears,* 144 Cal. 246, [77 Pac. 905].)

Whatever interest the junior mortgagee had in the mortgaged premises, by virtue of his mortgage, as against the senior mortgage, his right was the right of redemption, and it could not be taken from him by foreclosure of the senior mortgage, except by making him a party to that action. *(Ibid.)* The senior mortgage originally impressed a lien on nineteen-twentieths of the property—the entire interest except Miller's. The court found that of these nineteen-twentieths the junior mortgage impressed a lien upon nine-twentieths discharged from any lien of the senior mortgage, presumably because title thereto vested in the junior mortgagor, defendant company, by virtue of the deed from the Argalls to the defendant company, the deed inuring to the benefit of the mortgagee; or, in other words, the deed feeding the mortgage. In support of the view of the court it is also contended by respondent that the turn which the foreclosure proceedings took in foreclosing the senior mortgage was such as to wipe out the mortgage, at least as to the Argall interest, and leave the property subject alone to plaintiff's lien. Indeed, unless by some means the lien of the Blanchard mortgage was lifted from the Argalls' nine-twentieths interest, included in the senior mortgage, the Argalls could only convey their interest subject to the Blanchard mortgage. The argument of respondent upon the point that the Blanchard mortgage lien was discharged by the redemption, effected by the successors of the mortgagors' interest in the property, rests upon the following principles: That the exercise of the right of redemption confers no new rights and affects only the interest which the redemptioner was entitled to redeem; when redemption is made by the execution

debtor, or his assigns, grantees or successors in interest, the effect is merely to terminate the same and restore the property in its original condition.   (20 Am. & Eng. Ency. of Law, pp. 639, 640.)   That the judgment and receipt of redemption in money discharges the judgment of foreclosure, sets aside all the proceedings thereunder and places the parties in the same position they were in before the suit was brought, except that the debt is paid.   (Citing *Hocker* v. *Reas,* 18 Cal. 650; *Perkins* v. *Center,* 35 Cal. 713; *Eldridge* v. *Wright,* 55 Cal. 531; also *Stoddard* v. *Forbes,* 13 Iowa, 296; *Woodward* v. *Codery,* 41 Vt. 496.)

We do not understand that appellants controvert these principles, but they claim that appellants having redeemed the property from the Blanchard foreclosure, as successors in interest of the judgment debtors, they are in equity subrogated to all the rights and liens of the mortgagee in that action, and as between them and all prior lienholders, equity will preserve to them the lien of the prior mortgage.   In *Matson* v. *Shaeffer,* 65 Cal., at page 82, [3 Pac. 93], the principle is approved as laid down by Mr. Pomeroy in his Equity Jurisprudence, volume 3, section 1212: ''When any person having a subsequent interest in the premises, and who is therefore entitled to redeem, for the purpose of protecting his interest, *and who is not the debtor primarily and absolutely liable* for the mortgaged debt, pays off the mortgage, he thereby becomes an equitable assignee thereof, and may keep alive and enforce the lien so far as may be necessary in equity for his own benefit.   He is subrogated to the rights of the mortgagees to the extent neccessary for his own equitable protection.''   And the court held further that this equitable result follows, though a receipt was given speaking of the mortgaged debt as having been fully paid, and sometimes even though the mortgage itself was actually discharged and satisfied of record.   In *Shaffer* v. *McClosky,* 101 Cal. 576, [36 Pac. 196], it was held that one who is forced to pay the debt of another, in order to protect his own interest, and who is not a mere volunteer or intermeddler, is in equity to be subrogated to the debt.   (See *Hines* v. *Ward,* 121 Cal. 115, [53 Pac. 427].)   In *Darrough* v. *Herbert Kraft Company Bank,* 125 Cal. 272, [57 Pac. 983], the court held that where the owner of the mortgaged premises paid off a senior lien thereon without actual knowledge of the junior lien, the latter shall

derive no advantage over the senior lien; and that it will be presumed that such owner made the payment for his own benefit, and not for the benefit of the junior lienholder, and for the protection of his interests, equity will treat such owner as the assignee of the original senior lienholder, and will revive and enforce such senior lien for his benefit.

Respondent does not seriously controvert these principles, but he contends among other things that appellants, for various reasons, have not by their pleadings shown that they are entitled to invoke these rules. Conceding the sufficiency of the pleadings, it seems to us that in claiming to be the successors in interest of the Argalls, the only interest in controversy, appellants have failed to show a superior equity to the rights claimed by plaintiff. It appears that the Argalls conveyed their interest to defendant company May 31, 1899; that defendant company mortgaged the property October 25, 1899, and that the deed of the Argalls was recorded January 12, 1900. Appellants do not allege or show by evidence the date of their conveyance by which they became successors in interest of the Argalls and the other makers of the Blanchard mortgage. Claiming, as they did, that their right was superior to that of the plaintiff, the burden was on them to prove it. Plaintiff did not know and could not know the source of defendants' title or interest. The evidence is that Blanchard filed his complaint to foreclose on November 5, 1899; decree of foreclosure and sale was entered February 23, 1900; the commissioner made sale March 31, 1900; the complaint for redemption was filed June 24, 1901. There was an answer to the complaint denying most of its allegations. Findings of fact were waived and by consent a decree was entered adjudging that ''plaintiffs herein redeemed the premises . . . as successors in interest of the judgment debtors in the action aforesaid.'' In their answer to plaintiff's complaint in the present action, appellants allege that ''at the time of the commencement of this action, they were, ever since have been, and now are the owners of that certain quartz mine,'' etc. They, therefore, make no claim to ownership prior to the commencement of this action, which was July 24, 1902, and the earliest date any interest is shown in them is June 24, 1901. It would thus appear, and the trial court might well have inferred, that appellants in the present action—F. F. Britton and Mrs. A. L. Emerson, became suc-

cessors of the interests conveyed to them, including the Argall interest, long after the Argalls had conveyed to the defendant company and long after their conveyance was recorded and had inured to the benefit of the mortgagee of defendant company. When, therefore, appellants assumed to redeem as the successor in interest of the Argalls, they had constructive notice that the Argalls had already conveyed their interest to defendant company and that defendant company had mortgaged that interest to plaintiff's assignor. So far as appears they may also have had *actual* notice of the deed, and Mrs. Emerson, so far as appears, may also have had actual notice of the mortgage. Appellant Briton testified that he "did not know anything about this particular mortgage in controversy," but he said nothing about the deed. There is no fraud or bad faith alleged or shown in the conveyance by the Argalls to defendant company; there is neither allegation nor proof of mistake by appellants or that they were misled in any way in becoming successors in interest of the judgment debtors in the Blanchard foreclosure. As to eleven-twentieths interest in the property, they secured title which the court by its decree recognized and protected by declaring it to be subject to the senior mortgage and by refusing to subject it to plaintiff's lien. As to nine-twentieths, the Argall interest, the court held it subject to plaintiff's mortgage lien, and in effect held that by redeeming from the senior mortgage sale, and paying off the judgment debt, appellants thereby discharged the lien of that mortgage upon the Argall interest. We are unable to discover any equitable principle upon which the senior mortgage should be kept alive for the benefit of appellants or which would enable them to enforce a lien upon the Argall interest under the facts disclosed. We are quite convinced that the equitable principles invoked by appellants cannot be made to serve such object.

It is perhaps proper to add that the case of *Frates* v. *Sears,* 144 Cal. 246, [77 Pac. 905], relied upon by respondent, does not entirely meet the situation here, and it is not necessary to resort to the rule there established. In that case when the junior mortgagee, who had not been made a party to the foreclosure of the senior mortgage, brought his action to foreclose and made the senior mortgagee a party (who was the purchaser at his foreclosure sale), the latter failed in enforcing his prior lien because, when he answered, his mort-

gage debt had become barred by the statute of limitations. In the present case the senior mortgage was not barred when the answer was filed.

The reasoning may go further, but the point decided in *Frates* v. *Sears* was, that the lien of the senior mortgagee, is lost if, when he asserts it against the foreclosure of the junior mortgage, his mortgage debt is barred.

Respondent also relies upon the point that as soon as the Argall deed was delivered to the defendant company it commenced to feed the mortgage of plaintiff, although not recorded until later, and that the neglect of defendant company to record this deed cannot affect the rights of plaintiff. Numerous authorities are cited in support of the proposition. We neither affirm nor deny its soundness, in this particular case, but prefer to rest the decision upon the ground above stated.

The judgment and order are affirmed.

Buckles, J., concurred.

McLaughlin, J., concurred in the judgment.