[Civ. No. 797.    Third Appellate District.—March 24, 1911.]

EVALINA GOLD MINING COMPANY, a Corporation (Substituted for E. L. EMERSON, Mrs. A. L. EMERSON, F. F. BRITTON and JACOB MILLER), Respondent, *v.* YOSEMITE GOLD MINING AND MILLING COMPANY, a Corporation (Substituted for R. S. McWHIRTER), HARRY ARGALL and F. L. ARGALL, Appellants.

MINING LAW—ASSESSMENT WORK—FORFEITURE OF RIGHTS OF CO-OWNERS—CONSTRUCTION OF FEDERAL STATUTE.—Section 2324 of the Revised Statutes of the United States, which provides for a proceeding for the forfeiture of the rights of co-owners of a mining claim who have failed and refused to contribute to the assessment work required thereby, must be strictly construed, as imposing a forfeiture.

ID.—SUFFICIENCY OF NOTICE TO CO-OWNERS—GOOD FAITH—IGNORANCE OF UNRECORDED DEED.—The service of notice, under the terms of the statute, by the co-owners who have done the whole of the assessment work upon the mine, upon those who had for a long time been co-owners with them, and who were believed in good faith to be still such co-owners, requiring them to contribute thereto, without knowledge of anything to the contrary of their ownership, or of the existence of an unrecorded deed made by them, is sufficient. They were not required to serve notice upon anyone not known to be an owner.

ID.—KNOWLEDGE BY GRANTEE OF DEED—DELIVERY OF NOTICE BY CO-OWNERS NOTIFIED—RIGHTS CONCLUDED.—Where a corporation was the grantee of part of the co-owners under an unrecorded deed, and upon service of notice upon such co-owners such corporation received immediate knowledge of the same by the delivery of such

notice by such co-owners served to its president, such corporation had thereby an opportunity to protect itself from forfeiture by contributing under such notice, and it cannot now be heard to complain of consequences produced by its own neglect.

ID.—INSUFFICIENT WORK BY CO-OWNERS NOTIFIED — UNWATERING OF MINE FOR INSPECTION BY PROPOSED PURCHASER.—Where the only work attempted to be done by co-owners notified to contribute to the assessment work during the assessment year, consisted of the unwatering of the mine for inspection by a proposed purchaser, such work constituted no improvement upon the mine, and was no contribution to the assessment work contemplated by the Revised Statutes of the United States.

APPEAL from a judgment of the Superior Court of Tuolumne County, and from an order denying a new trial. G. W. Nicol, Judge.

The facts are stated in the opinion of the court.

Will M. Beggs, W. C. Kennedy, F. W. Street, and R. C. McComish, for Appellants.

J. P. O'Brien, for Respondent.

CHIPMAN, P. J.—This is an action to quiet the title to a certain mining claim known as the Slap Jack mine, situated in Tuolumne county. The original complaint was filed in 1899 and its object was to quiet the title of all the alleged owners as against the adverse claims of one R. S. McWhirter. The case, in some of its phases, has been twice before the supreme court, once before this court and once before the United States supreme court on writ of error. (*Emerson* v. *McWhirter*, 153 Cal. 510, [65 Pac. 1036]; *Emerson* v. *Yosemite Gold Mining etc. Co.*, 149 Cal. 50, [85 Pac. 122]; *Wemple* v. *Yosemite Gold Mining Co.*, 4 Cal. App. 78, [87 Pac. 280]; *Yosemite G. M. & M. Co.* v. *Emerson*, 208 U. S. 31, [28 Sup. Ct. Rep. 196, 52 L. Ed. 374].) At the first trial E. L. Emerson, Mrs. A. L. Emerson, F. F. Britton and Jacob Miller (predecessors in estate of plaintiff) and Harry Argall and F. L. Argall (predecessors in estate of defendant, Yosemite Gold Mining and Milling Company) were owners of the said mine, the former group owning eleven-twentieths and the Argalls nine-twentieths. The result of prior liti-

gation, as found by the court (finding 5), settled "all questions involved in this case, except the question of the ownership of the nine-twentieths interest, which was formerly owned by the defendants, Harry Argall and F. L. Argall," now claimed by plaintiff company and defendant company, as against each other. So far as the conveyances of the disputed nine-twentieths affect the questions now here, the court found the facts as follows:

The Argalls executed and delivered to Yosemite Gold Mining Company their deed, on May 31, 1899, but it was not recorded until January 12, 1900.

On May 30, 1900, the Yosemite Gold Mining Company executed and delivered to the Yosemite Gold Mining and Milling Company (defendant) its deed to the Argall interest, which was recorded September 28, 1900.

On February 15, 1904, the Emersons, Britton and Miller executed and delivered their deed to plaintiff, conveying all their interest in said mine, which said deed was recorded February 29, 1904.

Two issues of fact were presented and the findings thereon constitute the basis of the judgment in plaintiff's favor, from which and from the order denying their motion for a new trial, defendants appeal. These two issues of fact were: First, that the Argall interest passed to the Emerson group of co-owners by reason of their having done the assessment work on the mine for the year 1898 and the failure of the Argalls to contribute their share thereof, in consequence of which they were "advertised out" under the act of Congress, Revised Statutes, section 2324, [U. S. Comp. Stats. 1901, p. 1426], and hence passed to plaintiff by virtue of the deed to it executed February 4, 1904; and, second, that the Argall interest was foreclosed under mortgage sale and plaintiff redeemed the property and thus became the owner.

1. The court found that the Emersons, Britton and Miller performed the annual labor upon said mine for the year 1898, as required by the acts of Congress and the laws of this state (finding 7); and that the Argalls failed to perform any labor on the mine during that year and failed to contribute or pay to their co-owners their proportion of the said annual labor. (Finding 8.) The court further found that "after the expiration of the year 1898, and on or about

December 20, 1899,'' the Emersons, Britton and Miller, plaintiff's predecessors in interest, did ''give the said defendants Harry Argall and F. L. Argall, and each of them, personal notice in writing requiring them, and each of them, to contribute and pay to the said'' Emersons, Britton and Miller, ''within the time required by law, their proportion of the expenditure made by said'' Emersons, Britton and Miller, ''and notifying them and each of them, that if they, or either of them failed or refused, within the time required by law, to contribute and pay to the predecessors in interest of the plaintiff herein, their or either of their proportion of such expenditures, that then, and in that event, their interest in said Slap Jack mining claim, or the interest of the one so failing or refusing to contribute and pay his proportion of such expenditures, would thereupon belong to and become the property of their co-owners, the said'' Emersons, Britton and Miller.  (Finding 9.)   The court next finds (finding 10) that ''immediately after said notice was served upon said defendants Harry Argall and F. L. Argall, and on or about December 20, 1899, they delivered the same to the officers, agents and representatives of the Yosemite Gold Mining Company, and also to the officers, agents and representatives of the Yosemite Gold Mining and Milling Company, and that at all times thereafter each of said companies had full and actual knowledge of the contents of said notice'' and full and actual knowledge that the Emersons, Britton and Miller had performed the annual labor upon said mine in 1898, as aforesaid, and that the Argalls had not performed their part of said labor and had not contributed to its cost as above stated, and said companies also had full and actual knowledge that the Argall interest would be forfeited to the co-owners who had paid for said labor.   It is next found that neither of the Argalls, nor either of said companies ever contributed toward said expenditures, ''and that by reason thereof and of the statute in such cases made and provided the said'' Argalls and said companies ''forfeited to the said'' Emersons, Britton and Miller, plaintiff's predecessors, ''all of their and each of their right, title and interest of, in and to the said Slap Jack mining claim, and the nine-twentieths interest therein which was formerly owned by the said'' Argalls, ''and the same is now the property of plaintiff herein.''  (Finding 11.)   The court

also found that the Emersons, Britton and Miller ''did not know and had no notice, constructive or otherwise, of the execution or delivery of the deed which was made by the defendants Harry Argall and F. L. Argall to the Yosemite Gold Mining Company, or of the deed to the Yosemite Gold Mining and Milling Company, until the said deeds were recorded.''

The section of the Revised Statutes, *supra,* among other things, provides as follows: ''Upon the failure of any one of several co-owners to contribute his proportion of the expenditure required thereby, the co-owners who have performed the labor or made the improvements may, at the expiration of the year, give such delinquent co-owners personal notice in writing or notice by publication in the newspaper published nearest the claim, for at least once a week for ninety days, and if at the expiration of ninety days after such notice in writing or by publication, such delinquent shall fail or refuse to contribute his proportion of the expenditure required by this section, his interest in the claim shall become the property of his co-owners who have made the required expenditures.''

In the present case the notice was directed—''To Harry Argall and F. L. Argall.'' In all other respects it is conceded to have been sufficient. The claim of defendants is stated in their brief as follows: ''The circumstance that the notice was in fact delivered to the officers of the Yosemite company does not alter the case. It was not such a notice as would require the Yosemite company to pay any attention to it. It was not addressed to the then holder of the nine-twentieths interest, nor was it addressed to the assigns of the former holder, and this we take to be a fatal defect.''

It is claimed, and may at once be conceded, that the statute must be strictly construed, being one imposing a forfeiture. The statute does not prescribe the form of the notice or how the persons to whom it is addressed, or whom it is intended to notify, should be designated. The courts have dealt with the question in cases of publication in a newspaper. In *Elder* v. *Horseshoe Min. & Mill. Co.,* 149 U. S. 248, [24 Sup. Ct. Rep. 643, 48 L. Ed. 960], the notice was addressed—''To Rufus Wilsey, his heirs, administrators, and to all whom it may concern.'' Wilsey was dead and there was no administrator. It was contended that the heirs should have been

named. It was held that where by the local law title vested in the heirs and the administrator has but a lien on the real estate for administrative purposes, "it was not necessary that the notice should specifically name the heirs of the deceased owner."

In the case here, the notice was addressed to the Argalls and no others, and was served on them December 20, 1899, and by them immediately turned over to the Yosemite Gold Mining Company. It is true that on May 31, 1899, the Argalls had conveyed their interest to this company, but the court found, and the evidence was, that the co-owners did not know this fact, and the deed was not recorded, so as to give constructive notice, until January 12, 1900; and it was in the following May that this company deeded the Argall interest to defendant company, which latter deed was not recorded until the following September. It seems to us that the service of notice by the Emerson group of co-owners upon the Argalls, who had for a long time been their co-owners, and whom they still believed to be their co-owners and knew nothing to the contrary, was sufficient. If the notice had been made by publication, there would be some reason in holding, as the cases seem to hold, that, in order to bind unknown owners, the notice should not only be directed to the ostensible or supposed co-owners but to their heirs, administrators and assigns. But where the notice is addressed to and personally served upon the only known co-owners it would be idle to further address the notice, for there would be no known persons upon whom to serve it. So far as the Yosemite Gold Mining and Milling Company is concerned, it had no interest in the property until in May, 1900, and it is immaterial whether it was served. As to the Yosemite Gold Mining Company, it was served with the notice, for the evidence is that the Argalls passed it over immediately to the president of that company, and it therefore had, as the court found, full knowledge of its grantors' delinquency and that unless their proportion of the assessment work for 1898 was paid their interest would be forfeited to their co-owners. Before we could sustain defendants' contention we should have to hold that a co-owner, who has done all the assessment work for a given year, could not "advertise out" his apparent co-owner by serving upon him the required written notice, but

he must also give notice by publication addressed in the manner above pointed out in order to forfeit any interest some unknown person might have through an unrecorded deed from such co-owner. We cannot believe that the statute requires such course to be taken.

However this may be, the co-owner did, in fact, receive the notice by which every fact required by the statute to be given in the notice was made known to it. The Yosemite Gold Mining Company thus had the opportunity to protect itself from the forfeiture and cannot now be heard to complain of consequences produced by its own neglect.

Of the general purpose of the law of Congress, the supreme court said, in the case cited: "We are of opinion that the publication of notice was sufficient, although there was no administrator at the time of publication. It is unnecessary under this statute to publish notice to lienors. We agree with the supreme court of the state that the evident purpose and object of the law (section 2324, [U. S. Comp. Stats. 1901, p. 1426]) were to encourage the exploration and development of the mineral lands of the United States, and the sale of the same, and that all the provisions of the law having been framed with that object in view, if the required work is not performed, after the expiration of the year, and notice of contribution properly served or sufficiently published, the rights of delinquents are absolutely cut off, though the failure to do the work may have been caused by the death of the locator or locators during the year. When a notice has been rightfully published under the statute, it becomes effective in cutting off the claims of all parties, and the title is thus kept clear and free from uncertainty and doubt."

Appellants claim that the Yosemite Gold Mining Company was in possession of the mine in 1899 and did a large amount of work on it and that in October of that year it mortgaged the Argall interest which had been conveyed to it; and that from these facts it must be inferred that the Emersons had notice of the company's interest. The fact is that the possession of the company, whatever it was, was based upon the title claimed by McWhirter on what he called the Jim Blaine mine, which was McWhirter's attempted relocation of the property, afterward determined to be without validity. The

history of that litigation appears in former appeals but does not appear in this record; neither does it here appear that the Yosemite company, in 1899, did the work now claimed. It appeared without conflict that the Emersons knew nothing of any transfer by the Argalls to the Yosemite company, or that it claimed under them, until the deed was recorded.

It is also contended that the Argalls did more than their proportion of work on the mine in 1899. It appears from the testimony of the Argalls that the work done by them was for the sole purpose of unwatering the mine so that it could be examined by a prospective purchaser. This work was not done for the development or improvement of the mine, nor was it done to enable the Argalls to perform work on the mine. They testified that it was not done as assessment work nor was it intended to be so considered. Under such circumstances we are satisfied that the work was not such as is contemplated by the United States statute.

2. It appeared from the findings that on October 25, 1899, the Yosemite Gold Mining Company mortgaged certain mining property, "including among others, the said undivided nine-twentieths interest, of, in and to the Slap Jack mining claim aforesaid, to one Marsden, to secure the payment of a certain promissory note"; that on December 9, 1901, Marsden assigned said note and mortgage to one Wemple; that on July 24, 1902, Wemple commenced an action to foreclose said mortgage, in which said action a decree of foreclosure was duly entered and, on September 17, 1906, an order of sale was made by the court and the interest of defendant in said nine-twentieths in said Slap Jack mine was sold to the assignee of plaintiff in the action, the said Wemple, for the sum of $4,000, and certificate of sale was duly issued to him; that within twelve months thereafter, to wit, on October 11, 1907, "the Evalina Gold Mining Company, plaintiff herein, as the successor in interest of the defendants and judgment debtors in said action, redeemed said nine-twentieths interest in said Slap Jack mining claim, from said sale, and on said day tendered to and paid to the said Fred Sutton, commissioner, as aforesaid, the amount necessary to redeem said nine-twentieths interest in said Slap Jack mining claim from said sale, to wit, the sum of $4,480," and thereupon said com-

15 Cal. App.—46

missioner delivered to plaintiff herein his certificate of redemption "showing said payment on redemption," and said commissioner thereupon paid said moneys received by him from the plaintiff upon said redemption to the said E. H. Wemple, who accepted and retained the same in full redemption of said nine-twentieths of said claim and "ratified and acquiesced in said redemption."

No question is made by defendants as to the regularity of these proceedings by which plaintiff redeemed from this foreclosure sale. Defendants' contention now is that "unless the advertising out process was good, plaintiff derived no benefit from the redemption"; that, under the decision in *Wemple* v. *Yosemite Gold Mining Co.*, 4 Cal. App. 78, [87 Pac. 280], "when a redemption from a foreclosure sale is effected, its only operation is to discharge the mortgage debt, and leaves the property in the same status in which it stood before the mortgage was executed." Hence, it is claimed, as stated in the brief, "When the property was redeemed from the mortgage, the title reverted to the parties, just as it stood before the mortgage was given, so, in this case, if the Argalls had no interest in the property at the time the mortgage was given, when the property was redeemed from the foreclosure sale, the nine-twentieths interest in controversy reverted to the successors in interest of the Argalls."

Respondent contends that, as the successor in interest of the defendants in the Wemple foreclosure case, it redeemed said nine-twentieths interest from said sale, and paid said commissioner the sum of $4,480 and took an assignment of the certificate of purchase, and was thus subrogated to all the rights which Wemple acquired under the foreclosure sale and respondent's right to redeem cannot now be questioned. Attention is called to numerous cases holding that where redemption is made by one disqualified as a redemptioner, still if the purchaser at the sale accepts redemption he will not be heard to question it (*White* v. *Costigan,* 134 Cal. 37, [66 Pac. 78]); that under section 700 of the Code of Civil Procedure the purchaser at the sale "is substituted to and acquires all the right, title, interest, and claim of the judgment debtor thereto," the effect of which is to pass "the legal title to the land, subject to defeasance by the happening of the condition subsequent"; i. e., the right of redemp-

tion by the mortgagor *(Pollard* v. *Harlow,* 138 Cal. 390, [71 Pac. 454, 648]) ; that the assignee of the purchaser stands in the latter's shoes and, on failure of the judgment debtor to redeem within the statutory period, title passes without a sheriff's or commissioner's deed, which latter is but evidence of the title which vested by virtue of the sale, and that redemption is virtually a transfer of the certificate of sale. In short, it is contended that the Yosemite Gold Mining Company having failed to redeem, respondent paid its indebtedness under the statutory provisions as to redemption and now holds whatever title that company had in the mortgaged premises, through the operation of section 700 of the Code of Civil Procedure and is entitled to all the rights given by law to any redemptioner.

We have stated the respective claims of the parties upon this second proposition on which the lower court held with the plaintiff. But as we are clearly of the opinion that the judgment may safely rest upon the first question discussed, we do not deem it necessary to express an opinion upon the second point.

3. Certain two alleged errors in the rulings of the trial court are assigned as prejudicial. F. L. Argall was a witness for plaintiff. He testified: "I delivered the notice (the notice served by the Emersons) to Mr. Berg (president of the Yosemite company) the same evening it was delivered to me. It was at the residence of Mr. Beggs (attorney for the Yosemite company) and Mr. Berg in San Jose. Q. What if anything, was said to you at the time about the notice?" Defendants objected as immaterial and irrelevant and the objection was overruled. "A. Mr. Beggs paid no attention to it. Mr. Berg was present at that time." Later, Mr. Beggs was called as a witness for defendants. He had testified that he had been attorney for the Yosemite Gold Mining Company and the other company also. "Immediately after the notice to contribute was served upon Dr. Argall in the latter part of December, 1899, Dr. Argall handed the notice to me. Q. What did he (Dr. Argall) say to you at the time he handed you the paper? Mr. O'Brien: I object on the ground that it is incompetent, irrelevant and immaterial; I submit any declaration made by Dr. Argall cannot be binding upon the other party; it would be a conversation between Dr.

Argall and his own attorney." The court sustained the objection. There was no answer to the first question. If anything was said to Dr. Argall he does not state it. The answer that Mr. Beggs paid no attention to it (the notice) would not justify inquiry as to what Argall said at the time. He was not one of the plaintiffs and could not bind the plaintiff by his declarations. Furthermore, it could not be said to be rebuttal of testimony given by Argall for he did not answer the question; he merely said that Mr. Beggs paid no attention to the notice. We discover neither error nor prejudice in the rulings.

The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 23, 1911.